IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Continental Resources, Inc., an Oklahoma corporation, | ) ) ) | **ORDER GRANTING IN PART** |
| Plaintiff, | ) | **AND DENYING IN PART** |
| | ) | **CROSS-MOTIONS FOR SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) ) | |
| Rick Fisher and Rosella Fisher, | ) | Case No. 1:18-cv-181 |
| Defendants. | ) ) | |

I. **BACKGROUND**

A. **Continental's drilling of a salt water disposal well on property owned by Fishers**

Fishers are Montana residents who own real property in Bowman County, North Dakota, including the NE1/4 of Section 17, T131N, R106W ("subject tract").[1]  Fishers do not own the underlying minerals.

Continental is an oil and gas exploration and production company organized under the laws of the State of Oklahoma.  It conducts oil-field operations in western North Dakota.

The subject tract is geographically located in the Cedar Hills North Red River "B" Unit ("Unit") established by the North Dakota Industrial Commission, effective March 1, 2001, to unitize oil and gas operations within approximately 50,000 acres located in Bowman County and Slope County in southwestern North Dakota.  Continental is the operator of the Unit.

---

[1]  The record reflects that the totality of the Fishers ownership is as follows:
Township 131 North, Range 106 West
Section 8:  SW1/4
Section 17: N1/2, NE1/4SE1/4
Section 18:  NE1/4

In 2013, Continental drilled and completed a salt water disposal ("SWD") well on the subject tract owned by Fishers without coming to any agreement with them.  Prior to drilling and completing the well, Continental obtained a permit from the North Dakota Industrial Commission to drill and operate the well, formally known as the Lonesome Dove 42–17 SWD well.

**B.      The earlier Fisher action**

Before the Lonesome Dove SWD well became operational, Fishers sued Continental in state court for claims of nuisance, trespass, fraudulent misrepresentation, deceit, and statutory damages under N.D.C.C. § 38–11.1–04.  Continental removed the action to this court and the case was docketed as Fisher v. Continental Resources Inc., No., 1:13-cv-00097 ("Fisher I").

In the ensuing  litigation, Fishers contested Continental's claim that it had the right to use their property for salt water disposal both as a general matter and it being an unreasonable exercise of the rights of the dominant mineral interests in this particular instance.  In the alternative, Fishers claimed they were entitled to statutory compensation under N.D.C.C. § 38–11.1–04 for the use of their surface acreage as well as the underlying pore space to which they claimed ownership.  Fishers also sought other relief not relevant now.

In opposition, Continental contended it had the right to use Fishers' property for its SWD operations based on its mineral interest rights as well as unit operator and that its use in this particular instance is a reasonable exercise of the rights of the dominant mineral interests.  With respect to Fishers' § 38-11.1-04 claim for damages, Continental agreed it owed money for the use of the surface but claimed with respect to the pore space that no money was owed because the Fishers did not own it.  In the alternative, Continental contended § 38-11.1-04 did not provide compensation for use of or damage to the pore space and, even if it did, there would be no

compensable damage.

In a 2014 order in Fisher I ("2014 Order"), this court concluded that Continental as the unit operator had the right to use Fishers' property for a SWD well but only if the use was reasonable, which the court stated to be a question of fact to be resolved in further proceedings.  At the same time, the court declined to take up the pore-space issues due to inadequate development of the issues in the briefing up to that point.  However, the court did indicate in a footnote that good arguments existed for concluding that Fishers, as surface owners, owned the pore space and that damages could be collected pursuant to § 38-11.1-04.  Fisher I, 49 F. Supp. 3d 637 (D.N.D. 2014).

Later, in 2015, the court did address the pore space issues.  The court concluded the pore space is part of the surface estate and is owned by Fishers.  The court further concluded that § 38-11.1-04, which allows for the recovery of compensation for damage to or use of the "surface owner's land," extends to the pore space.  Finally, the court concluded it was premature to take up the issue of what compensation would be due since Continental at that point had not begun using the Lonesome Dove SWD.  Fisher I, 2015 WL 11400124.

In reaching these conclusions with respect to ownership of the pore space and the availability of § 38-11.1-04 as a remedy, the court in Fisher I relied in part upon the undersigned's decision in Mosser v. Denbury Res., Inc., 112 F. Supp. 3d 906 (2015) ("Mosser").  Like Fishers here,  Mossers in that case owned the surface estate but not the severed minerals.  They too were contesting the right of the mineral developer to use their property for salt water disposal as well as seeking compensation for such use of their land, including the pore space, pursuant to § 38-11.1-04.  The undersigned had concluded in that case that Mossers owned the pore space as part of their fee estate. In so concluding, the  undersigned relied in substantial part upon N.D.C.C. § 47-01-12, which dates

back to at least the 1877 Civil Code for the Dakota Territory and provides that the fee owner has the

"right to the surface and to *everything* permanently situated beneath or below it."  (italics added).

The undersigned further concluded that N.D.C.C. § 47-31-03, which affirmatively provides that title

to the pore space belongs to the surface owner and was enacted as part of ch. 47-13 in 2009 to

address pore space ownership, was intended to make explicit what already was the law in North

Dakota by virtue of § 47-01-12.  Id. at 919.  With that, the undersigned went to conclude that the

term "land" in the compensation provisions of N.D.C.C. § 38-11.1-04 extended to everything owned

by the surface owner (including the pore space) and not just the surface.   Id. at 920–24.

The undersigned's conclusions in Mosser and Judge Hovland's similar conclusions in Fisher

I were at the time of those decisions predictions of what North Dakota law was.  This is because the

North Dakota Supreme Court had yet to weigh in on the issues of pore space ownership and whether

the term "land" in § 38-11.1-04 may include the pore space. This changed in 2017 with the North

Dakota Supreme Court's decision in Mosser on certified questions from this court.  But, this is

getting ahead of what came next.

In  May 2016, Fishers and Continental reached a partial settlement of what was at issue in

Fisher I culminating in the execution of a Stipulation to Dismiss ("Stipulation") that stated, in

relevant part, the following:

> Whereas the Fishers have initiated the above-captioned action, alleging, inter alia, claims for lost land value and lost use of and access to their land under Chapter 38-11.1 of the North Dakota Century Code, and have claimed they are entitled to compensation for (1) losses associated with the actual surface of the property where the Lonesome Dove Well site and associated infrastructure is located ("Surface Claims") and for (2) losses associated with the pore space into which produced water could be injected by the Lonesome Dove Well ("Pore Space Claims"); and
>
> Whereas the Parties wish to avoid the risk, time, expense, and aggravation of litigation with respect to the Surface Claims, and have therefore agreed to resolve all claims that arise from or relate to the use of the actual surface of the Subject Lands for construction

of a well pad and related infrastructure, including claims related to any alleged fraudulent misrepresentation, deceit, nuisance or trespass ("Resolved Claims"), but not the claims related to the alleged use of pore space ("Unresolved Claims");

Now, therefore, the Fishers and Continental stipulate and agree as follows:

1. The above-captioned case shall be dismissed with prejudice and without costs to either party with respect to the Resolved Claims.

2. The above captioned case shall be dismissed without prejudice and without costs to either party with respect to the Unresolved Claims.

3. If Continental begins using the Lonesome Dove Well for production water disposal operations, either party may, at their option, reopen the case for adjudication of the Unresolved Claims by filing an appropriate motion with the Court. Upon being reopened, the case shall continue as if it had not been closed, and the parties shall remain bound by all opinions and orders previously issued by the Court in the above-captioned action.

(Fisher I, Doc. No. 88).

Upon entry of the Stipulation, the court ordered the case be dismissed in accordance with it,

parroting much of the Stipulation's language. (Fisher I, Doc. No. 89). Then, pursuant to the court's

order for dismissal, a judgment dated May 9, 2016, was entered as follows:

The above-captioned case shall be dismissed with prejudice and without costs to either party with respect to the Resolved Claims. The above-captioned case shall be dismissed without prejudice and without costs to either party with respect to the Unresolved Claims. If Continental begins using the Lonesome Dove Well for production water disposal operations, either party may, at their option, reopen the case for adjudication of the Unresolved Claims by filing an appropriate motion with the Court. Upon being reopened, the case shall continue as if it had not been closed, and the parties shall remain bound by all opinions and orders previously issued by the Court.

(Fisher I, Doc. No. 90).

On November 18, 2016, the undersigned certified a number of questions to the North Dakota

Supreme Court in Mosser primarily to address several very thorny questions with respect to the

scope of § 38-11.1-04's compensation remedy with respect to the underlying pore space and what

may be offered as relevant evidence of damage. However, believing it unfair to ask the North

Dakota Supreme Court to answer questions directed solely to these issues in a vacuum, the

undersigned posed two questions directed to the overarching issues the undersigned had already

decided based upon a prediction of what the North Dakota law was.  Mosser, No. 1:13-cv-148, 2016

U.S. Dist. LEXIS 160376, at **7–22 (D.N.D. Nov. 18, 2016) (request to answer certified questions);

Mosser, 2017 ND 169, ¶¶ 14, 18, 898 N.W.2d 406 (2017).

> The first certified question the undersigned posed in Mosser was:

> 1. In North Dakota, does the owner of the surface estate own the pore space deep below the surface, absent some conveyance of the pore space to a third party and even when the mineral estate has been severed from the surface estate?

In its discussion of that question, the North Dakota Supreme Court discussed the interplay between

§ 47-01-12 and the more recently enacted ch. 47-13.  The court stated:

> [¶ 16] Chapter 47–31, N.D.C.C., was enacted in 2009 N.D. Sess. Laws ch. 401 in conjunction with provisions for carbon dioxide underground storage in 2009 N.D. Sess. Laws ch. 318. The legislation codifying pore space policy was intended to confirm that surface owners own the pore space under their surface estate. See Hearing on S.B. 2139 Before Senate Natural Resources Comm., 61st N.D. Legis. Sess. (Jan. 16, 2009) (written testimony of Assistant Attorney General Charles Carvell). That testimony is consistent with N.D.C.C. § 47–01–12, N.D.C.C., which dates back to 1877 Civil Code for the Dakota Territory, and states the "owner of land in fee has the right to the surface and to everything permanently situated beneath or above it."

Id. at ¶ 16.  Following that discussion, the court concluded "the owner of a surface estate owns the

underlying pore space absent a conveyance of the *pore space* to a third party before April 9, 2009."

Id. at ¶ 17 (italics added). It then answered the question "Yes."  Id.  Relevant to what comes later,

the court did *not*, for example, answer: "Yes, but only if the mineral estate was not severed prior to

April 9, 2009, the effective date of N.D.C.C. ch.  47-31."

> The second certified question the undersigned asked in Mosser was:

> 2. If the answer to the first certified question is yes, do the provisions of N.D.C.C. § 38–11.1–04 that require compensation be paid to a surface owner for "lost land value" and "lost use of and access to" a surface owner's land extend to a mineral developer's use of the subsurface pore space for the disposal of saltwater generated as a result of drilling operations?

The North Dakota Supreme Court addressed this question at some length, including setting forth the undersigned's extended quotation from Judge Hovland's 2015 Order that was part of the request for answers to the certified questions.  Id. at ¶¶ 18–24.  The court ultimately answered:

> When the provisions of N.D.C.C. §§ 38–11.1–04, 47–01–04, and 47–01–12 are read together, we agree with the interpretations by the federal magistrate judge and the federal district court that pore space is part of the surface owner's interest in the land for purposes of N.D.C.C. § 38–11.1–04. We conclude a surface owner may be entitled to compensation under N.D.C.C. § 38–11.1–04 for a mineral developer's use of the surface owner's subsurface pore space for disposal of saltwater generated as a result of drilling operations. We answer the second certified question "yes."

Id. at ¶ 24.

Next in the sequence of events relevant to the present case is the North Dakota Legislature's passage in April 2019 of Senate Bill 2344 that amended N.D.C.C. chs. 38-08, 38-11.1 and 47-31. Among other things, the 2019 Amendments appear to eliminate the right of the surface owner to recover compensation for use of the pore space under § 38-11.1-04—at least as of the effective date of the law.

Finally, and even more recently, a state district court decided that Senate Bill 2344 is unconstitutional in its entirety, at least under the North Dakota Constitution, and enjoined its enforcement.  Northwest Landowners Ass'n v. State of North Dakota, No. 05-cv-00085 (N.D. Dist. Ct., N.E. Jud. Dist., Memorandum Opinion Jan. 21, 2021) (Benson, Swain D.J.).  Continental is a party to this state action as an intervenor-defendant.  Id.

## II.    DISCUSSION

In response to a procedural motion in this case, Continental appeared to suggest it was taking the position it has the right to use the pore space without paying compensation to Fishers based on rights it acquired prior to April 9, 2009— notwithstanding what this court had earlier concluded in Fisher I and the parties's Stipulation.  (Doc. No. 46, pp. 3–4).  Believing the court had already

resolved the questions of pore space ownership as well as Fishers' right to at least some

compensation if the pore space is used, Fishers filed their present motion for partial summary

judgment to head off further consideration of these issues.

The fear on the part of Fishers that Continental was going to take another run at the pore

space ownership issue was well-founded.   In its later filed motion for summary judgment,

Continental, among other things, again contests Fishers' ownership of the pore space, arguing they

do not own it (and, hence, are not entitled to compensation  under § 38-11.1-04 for its use) because

the mineral estate was severed from Fishers' fee surface estate prior to April 9, 2009.[2]

In addressing the motions now pending, the undersigned will start first with Continental's

motion for summary judgment given that what the undersigned concludes with respect to that motion

largely disposes of Fishers' motion for partial summary judgment.

A.    **Continental's argument that Fishers do not own pore space because the mineral estate was severed prior to April 9, 2009, is specious given what this court previously concluded in <u>Fisher I</u>, the Stipulation of the parties, and what the North Dakota Supreme Court concluded in <u>Mosser</u>**

Continental contends the pore space at issue is owned by the dominant mineral interests and

not Fishers because there had been a severance of the mineral estate prior to April 9, 2009, and with

that severance so went ownership of the pore space.  Continental claims this result flows from what

this court decided in <u>Fisher I</u> and the North Dakota Supreme Court in <u>Mosser</u>.  More specifically,

---

[2]  Continental claims that it "deferred briefing" in <u>Fisher I</u> of this argument, choosing instead to pursue other arguments. (Doc. No. 54, p. 3).  The undersigned has a difficult time believing Continental would purposefully withhold what it contends is a dispositive argument, spend thousands of dollars pursuing other arguments, and risk losing the argument (as it may very well have) by failing to advance it in response to Fishers' request for summary judgment in <u>Fisher I</u> that they owned the pore and consequently are entitled to compensation under § 38-11.1-04 (Doc. Nos. 38 &.39).

Continental had "multiple shots on goal" in <u>Fisher I</u> to make the precise argument it is now advancing.  (<u>Fisher I</u>, Doc. Nos. 20, 41, 50).  For whatever reason  it did not do so.  However, it may well have been that the very experienced counsel handling the case at the time (the author of the present argument joining the fray only most recently in this case) concluded the argument would be a nonstarter for the reasons the North Dakota Supreme Court in <u>Mosser</u> resolved the certified questions as it did.

Continental states:

> But the Fishers say nothing about Judge Hovland's ruling in the prior <u>Fisher</u> case or the North Dakota Supreme Court's affirmation of it in <u>Mosser v. Denbury Resources, Inc.</u>, 2017 ND 169, 898 N.W.2d 406.  Both held the Act's [*i.e.*, ch. 38-11.1's] remedies apply "in the absence" of a severance of the mineral estate before April 9, 2009.  <u>Id.</u> ¶ 23 ("in the absence of a severance of the mineral estate, or the severance of the pore space estate made prior to April 9, 2009, . . . a fee simple owner of land owns . . . the pore space" (emphasis added)); <u>see also</u> <u>Fisher v. Continental Res., Inc.</u>, No. 1:13-cv-00097, 2015 WL 14400124, at *4 (D.N.D. Oct. 8, 2015) (surface owner owns pore space "in the absence of a severance of the mineral estate, or the severance of the pore space estate made prior to April 9, 2009").[2]

(Doc. No. 59, p. 11).  Then, in a footnote 2, Continental adds:

> Judge Hovland reasoned "in the absence of a severance of the mineral estate, . . . [i]t would be illogical to conclude that the pore space is not a component of the land as that term is commonly understood and as it is used in Section 38-11.1-04." <u>Fisher</u>, 2105 WL 14400124, at *4. Stated the other way around, in the presence of a severance of the mineral estate, it would illogical to conclude that the pore space is a component of the land as that term is used in section 38-11.1-04.

(<u>Id.</u>).

In advancing this argument, Continental shamelessly takes out-of-context Judge Hovland's use of the words "in the absence of a severance of the mineral estate" in <u>Fisher</u>.  The same applies for the North Dakota Supreme Court's decision in <u>Mosser</u> since the passage from that opinion cited by Continental was the court quoting Judge Hovland.  What Judge Hovland stated in its entirety was:

> The express language of Section 38–11.1–04 requires compensation for the "lost use of and access to the surface owner's land." N.D.C.C. § 38–11.1–04 (emphasis added). *North Dakota law is clear that "the owner of land in fee has the right to the surface and to everything permanently situated beneath or above it." N.D.C.C. § 47–01–12.  Land is considered real property. N.D.C.C. § 47–01–03. Thus, in the absence of a severance of the mineral estate, or the severance of the pore space estate made prior to April 9, 2009, the effective date of Chapter 47–31, a fee simple owner of land owns not only the surface, but all which lies beneath the land, including the minerals and the pore space.  Pore space, which is no longer severable from the surface estate in North Dakota, is an estate in land much like the mineral estate.*  The North Dakota Legislature has irrevocably tied the pore space estate to the surface estate in Chapter 47–31. Chapter 47–31 makes clear that title to the pore space estate is vested in the owner of the surface estate, and severance of the pore space from the surface estate is prohibited. N.D.C.C. §§ 47–31–05 and 47–31–03. It would be illogical to conclude that the pore space is not a component of the land as that term is

commonly understood and as it is used in Section 38–11.1–04.  This finding is in keeping with the purpose of Chapter 38–11.1 which is to "provide the maximum amount of constitutionally permissible protection to surface owners and other persons from the undesirable effects of development of minerals" and the requirement that Section 38–11.1–04 "must be interpreted to benefit surface owners." N.D.C.C. § 38–11.1–02.

Accordingly, the Court finds as a matter of law that the term "land" as used in Section 38–11.1–04 encompasses the pore space.  The Court further finds that the language and purpose of Chapter 38–11.1 are broad enough to encompass compensation for use of the surface owner's pore space as a component of the "surface owner's land" as provided in Section 38–11.1–04.

Fisher, 2015 WL 11400124, at **4–5; Mosser, 2017 ND 169, ¶ 24 (quoting the undersigned's certification order in Mosser that, in turn, quoted Fisher I).

Here, it is patently obvious that, when Judge Hovland used the words "in the absence of a severance of the mineral estate" in the italicized passage, it was nothing more than a qualifier upon his general point that the fee owner owns both the surface and the mineral estate (i.e., the fee owner does not own the mineral estate if the mineral estate has been severed).  And, he was not saying the fee owner does not own the pore space if the mineral estate has been severed.  In fact, Judge Hovland went on to state that the pore space is an estate different from the mineral estate.

But, even if there could be some doubt from the passage of Fisher I that Continental relies upon (which reasonably there cannot be), there is also Judge Hovland's conclusion in Fisher I that Continental conveniently ignores.  That is:  "Continental must compensate the Fishers for any damage to their pore space if the well is utilized and the Fishers can prove their damages." Fisher I, 2015 WL 11400124, at *6. Notably, Judge Hovland did not say "Continental must compensate the Fishers unless there was a prior severance of the mineral interests."  Nor did  he suggest there would have to be further proceedings to determine what Fishers owned, including whether there had

been a  severance of the mineral interests prior to April 9, 2009.[3]

Continental has acknowledged in its briefing that the effect of the parties' Stipulation in

Fisher I was an agreement to be bound by matters decided by this court in that proceeding.  (Doc.

No. 57, p. 30) ("The parties stipulated to be bound by matters actually decided in the prior case . .

. .").  With that and the court's clear conclusion in Fisher I that Fishers own the pore space at issue,

there is no need to address the particular arguments now made by Continental for why Fishers do

not own it.[4] Continental's present argument for why Fishers do not own the pore space were waived

by the Stipulation—assuming, without deciding, there was not an earlier waiver or procedural

default.[5]

**B.      Continental's request for a ruling that it does not owe compensation for any well injections made after July 31, 2009, given the passage of SB 2344**

Continental requests that this court conclude that it owes nothing for any injections from its

SWD well after July 31, 2009, which is the effective date of SB 2344.  The court rejects this request

given the ruling of the state district court set forth above.  Also, the court has some doubt about the

whether SB 2344 has any application to this case.  This is because of the conclusion by Judge

---

[3]  To put it another way, does Continental seriously contend that Judge Hovland somehow lost his way between the passage that Continental relies upon for support of its claim that he purportedly held a surface owner owns the pore space only if there has been no severance of the mineral interests prior to April 9, 2009, and his ultimate conclusion?

[4]  Further, the same applies even if this court is free to revisit any order in Fisher I that may have not been final. In that instance, as any law student who has completed a course in federal courts knows, this court is obligated in this diversity action to apply what the North Dakota Supreme Court has concluded the applicable state law to be and not what this court believes it should be.  And, contrary to Continental's contention now, the North Dakota Supreme Court concluded that the pore space is owned by the fee surface owner unless the *pore space* has been severed prior to April 9, 2009, as discussed earlier.  Continental's claim to the contrary, based upon its tortured reading of what Judge Hovland concluded as recited by the North Dakota Supreme Court is without merit.

[5]  Given this conclusion, the court need not consider whether any of the claim preclusion doctrines argued by Fishers also prohibit Continental from contesting Fishers' ownership of the pore space although that appears likely as well. Further, the undersigned also agrees with Fishers that Continental's complaint for declaratory relief in this case did not give fair notice it would be seeking a declaration that Fishers do not own the pore space on account of a severance of the mineral interests prior to April 9, 2009.

Hovland in <u>Fisher I</u> as set forth above that Continental owes compensation for the use of the pore space to the extent Fishers can prove damages and Continental's acknowledgment in its briefing that the parties are bound by what was decided in <u>Fisher I</u>.  The court need not decide this point now given the state court's ruling.  Also, there *may* be a factual component to this issue that would need to be resolved.

> **C.**      **Continental's argument that, given the record in this case, there is no basis for Fishers' "reasonable accommodation" claim**

As noted earlier, Fishers claimed in <u>Fisher I</u> that Continental's use of their property for disposal of salt water was an unreasonable exercise of the dominant rights of the mineral interest holders and Judge Hovland in his 2014 Order concluded this claim presented a fact issue that precluded summary judgment at that point.   Continental argues it is now entitled to summary judgment of dismissal of this claim based upon Fishers' answer to Continental's interrogatory stating they had no plans for using the pore space.  In support, Continental cites this court's decisions in <u>Mosser</u>, 112 F. Supp. 3d at 917 and <u>Continental Resources, Inc. v. Reems</u>, No. 1-15-cv-76, 2016 WL 5376179, at *3 (D.N.D. Sept. 26, 2016).

In <u>Mosser</u> and <u>Reems</u>, the undersigned concluded that, to support a claim of an unreasonable exercise of the rights of the dominant mineral estate by failing to reasonably accommodate a surface owner, more must be shown than that the mineral developer has alternatives.  Rather, the surface owner must point to uses by the surface owner, or at least imminent ones, that warrant reasonable accommodation.  <u>Id.</u>

Here, Fisher's interrogatory answer is probably sufficient to foreclose their "reasonable accommodation" claim as Continental contends—at least in the context of this case.  In fact, it appears from the lack of any meaningful response to this argument that Fishers have conceded this

to be the case.  But, even if not, Fishers have failed to come forward with sufficient submissible evidence to support a reasonable accommodation claim, which dooms it to failure since Fishers at this point can no longer rely simply upon whatever has been alleged in the pleadings.

> **D.      Fishers' request that the court declare they are entitled to "some" compensation for their use of the pore space**

As already discussed, the court has concluded in <u>Fisher I</u> that § 38-11.1-04, which allows for the recovery of compensation for damage to or use of the "surface owner's land," extends to the pore space.  The court declines at this point to rule any further on the compensation issue.  However, it might very well be that Fishers are entitled to at least nominal compensation if they are unable to prove a greater amount.

## III.    <u>ORDER</u>

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** the cross-motions for summary judgment (Doc. Nos.  50 & 56) as follows:

1.      Judge Hovland's conclusions in <u>Fisher I</u> that (a) Fishers own the pore space as part of their surface estate, and (b) that the term "land" as used in N.D.C. C.  § 38-11.1-04 includes the pore space, are binding in this case by agreement of the parties, but, even if not, are conclusions required by the North Dakota Supreme Court's decision in <u>Mosser</u>, <u>supra</u>.

2.      Any claim by the Fishers that Continental has failed to reasonably accommodate uses of their property is dismissed on the merits.

3.      The remaining requests for summary judgment, all or in part, are denied.

**IT IS SO ORDERED**.

Dated this 19th day of February, 2021.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court