**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Continental Resources, Inc., an Oklahoma corporation, | ) | |
| | ) | |
| | ) | **ORDER AWARDING** |
| Plaintiff, | ) | **FEES AND COSTS** |
| | ) | **FOR THE APPEAL** |
| | ) | |
| vs. | ) | |
| | ) | |
| Rick Fisher and Rosella Fisher, | ) | Case No. 1:18-cv-181 |
| | ) | |
| Defendants. | ) | |

Before the court is the post-appeal motion by defendants Rick and Rosella Fisher (the "Fishers") for an award of attorney fees and costs for the appeal taken by plaintiff Continental Resources, Inc. ("Continental").

## I.    BACKGROUND

On October 7, 2022, the jury awarded the Fishers $22,440.25 for Continental's use and occupation of the Fishers' subsurface pore space for injections of waste water up to October 4, 2022. (Doc. Nos. 191, 192).  Following the trial, the Fishers moved the court for an award of attorney fees and costs and Continental renewed its motion for judgment as a matter of law or, in the alternative, for a new trial.  (Doc. Nos. 194, 204).

On December 27, 2022, the court denied Continental's motion and granted in part the Fishers' motion.  With respect to the latter, the court awarded $249,243.60 in attorney fees and $87,639.89 in expert fees and costs for a total award of fees and costs of $336,883.49.  (Doc. No.

1

213).  Continental v. Fisher, No. 1:18-cv-181, 2022 WL 17960531 (D.N.D. Dec. 27, 2022).[1]  An amended judgment was entered the same day reflecting the amount of the jury award and the court's award of fees and costs. (Doc. No. 214).

Continental then appealed the jury's verdict, the court's denial of Continental's post-trial motion, and the court's award of attorney fees and costs.  (Doc. No. 215).   As part of its appeal, Continental made several arguments for why it was entitled to a judgment of dismissal or, in the alternative, for a new trial.  Continental also challenged the award of attorney fees and costs.  See Continental v. Fisher, 102 F.4th 918 (2024).   On May 24, 2024, the Eighth Circuit issued its decision affirming the jury award as well as the award of fees and costs.  Id.

In the motion now before the court, the Fishers initially seek an additional $52,487.00 in attorney fees and $4,194.30 in costs for the handling of Continental's appeal.  (Doc. Nos. 221, 223-1).  Continental responds contending both requests are inflated and excessive. (Doc. No. 226).  The Fishers in their reply disagree.  Also, the Fishers amend their attorney fee request to include an additional $6,179.00 for time spent following the Eighth Circuit's decision, including preparation of the present motion for attorney fees and costs.  (Doc. Nos. 227, 228-1).

Following the filing of the Fishers' reply, the court held a telephone conference with the parties to discuss the motion.  (Doc. No. 230).  The court then entered an order permitting Continental to make a sur-reply to the Fishers' amended fee request.  In addition, the court ordered Continental to make a filing setting forth the hours it spent on the appeal, what the hours were for, and its costs.  (Doc. No. 231).

---

[1] The correct case name is used.  Westlaw's citation used "Fischer" instead of "Fisher." Undoubtedly, this was due to the court's mistake in using "Fischer" for the first-named defendant in the caption rather than "Fisher," which was correctly used for the second named defendant and in the body of the order.

Subsequently, Continental filed its attorney billings and a sur-reply.  (Doc. No. 232-1). Continental argues in the sur-reply that the supplemental fee request should be denied or, in the alternative, substantially reduced.  Also with the filing of its own attorney billings, Continental presents additional argument for why the Fishers' initial fee request is excessive.  (Doc. No. 232).

The court has carefully reviewed:  (1) the briefs filed by the parties on the pending motion; (2) the time and expense records of both parties' legal teams; (3) the Eighth Circuit's decision on appeal; (4) the parties' appellate briefs and other appellate filings; and (5) the recording of the oral arguments before the Eighth Circuit.

## II.    GOVERNING LAW

In its decision on appeal, the Eighth Circuit discussed the law that governs the award of attorney fees in this case.  It held that North Dakota law governs, specifically N.D. Cent. Code § 38–11.1–09.  Fisher, 102 F.4th at 929–30.  It concluded North Dakota law permitted use in this instance of either the "lodestar method" for determining the reasonableness of the requested fees or the "itemized bill and affidavit" approach permitted by Johnson v. Menard, Inc., 955 N.W.2d 27, 33 (N.D. 2021).  Id. at 930.  Finally, it held that the eight factors set forth in Big Pines, LLC v. Baker, 958 N.W.2d 480, 486 (N.D. 2021) ("Big Pines") guide the determination of a reasonable fee award under North Dakota law. The eight "Big Pines factors" are:

(1)      the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)      the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)      the fee customarily charged in the locality for similar legal services;

(4)     the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)     whether the fee is fixed or contingent.

Id. at 92–93 (quoting Big Pines, 958 N.W.2d at 486).

## III.    ATTORNEY FEES FOR THE APPEAL

### A.    The Big Pines factors that either are not in dispute or are of no material assistance in this case

Continental does not claim the hourly rates employed by the Fishers' legal term are excessive.  Further, the court is independently aware the rates are within the prevailing market for this locality.  This resolves the third Big Pines factor.

Continental also does not suggest the fees for the Fishers' legal team should be reduced because of the "experience, reputation, or ability" (or lack thereof) of its members.  Nor would there be a basis for such a contention.  Also, the court is not inclined to adjust the request upward for these reasons.  This resolves the seventh Big Pines factor.

The second, fifth, and sixth Big Pines factors are of little assistance.  Hence, the  court gives them no weight one way or the other.  Continental apparently agrees because it does not mention these factors in its opposition to the fee request.

As for the eighth factor, the Fishers' fee request is based on the time expended by its legal team.  If the court was aware at one time whether the Fishers' fee arrangement with counsel was fixed or contingent, it does not now recall.  In any event, Continental has not made it an issue and

the court independently places no weight on this factor.

### B.     The fourth Big Pines factor

The fourth Big Pines factor is "the amount involved and the results obtained[.]"   In terms of the amount involved, what was at stake was the jury award, the principle that the Fishers were entitled to compensation as a matter of law (which may be material to any claims made by the Fishers for future injections of waste water into their subsurface), and the court's award of $336,883.49 in attorney fees and costs.  With respect to the "success achieved," the Eighth Circuit rejected every point of appeal asserted by Continental thereby preserving for the Fishers what was a stake.

Here the fourth Big Pines factor supports a fulsome award.  See Fisher, 102 F.4th at 931-32 (upholding this court's reliance on this factor in support of its earlier fee award of $249,243.60).

### C.     The First Big Pines factor

The first Big Pines factor includes several inter-related considerations: (1) "the time and labor required," (2) "the novelty and difficulty of the questions involved," and (3) "the skill requisite to perform the legal service properly."   The  entire focus of Continental's objections to the Fishers' fee request is on the time spent by the latter's legal team.  The court will address the time spent by the Fishers' legal team  in this section and address the remaining considerations in making its award.

### .     1.     Continental's initial response to the fee request

In its response brief, Continental points to the Fishers requesting compensation for 193 hours of work performed by "three attorneys and two paralegals."  (Doc. No. 226, at 2).  Continental argues some of the hours are for unrelated matters and other hours are excessive or redundant to work done by others.  Continental includes a chart in its response brief that sets forth each line item

from the Fishers' attorney billings that it claims is either inappropriate or excessive. Then, for each entry, Continental states its objections and sets forth the hours claimed to be non-compensable. The total number of hours Continental claims to be excessive or inappropriate is 46.8. And, when those hours are multiplied by the appropriate rate for the particular timekeepers, the total amount claimed as excessive or inappropriate according to Continental is $11,758—slightly more than 22% of the Fishers' fee request.

Continental does not stop there, however. It further invites the court to make an even greater reduction, stating the court would be justified in cutting the Fishers' fee request by "25%, or even 50%," for "inadvertent duplication of effort arising *from staffing the case with too many attorneys* . . . ." (Doc. No. 226, at 4) (emphasis added; internal quotation marks and citing authority omitted).[2]

### 2.    Fishers' reply

In reply, the Fishers do not address the particulars of the entries claimed by Continental to be excessive or inappropriate. Rather, they argue that the fee request is reasonable given the issues involved, what was at stake, and the results achieved. They refer to Continental's particular objections as nitpicking.

The court agrees that a number of Continental's objections are nitpicking—particularly in the context of its own attorney billings. This will be addressed in detail below. However, Fishers' counsel has simply dumped all of his billing records on the court without making any effort to weed

---

[2] While Continental does not argue that the time of only one attorney can be compensated, it comes close when it suggests a reduction of 50% would be appropriate based upon staffing the case with "too many attorneys." Notably, North Dakota law does not limit an award of fees to the time of one attorney. Rather, the touchstone is whether the fees requested are reasonable. In <u>North Dakota Department of Transportation v. Rosie Glow</u>, LLC, 2018 ND 123, 911 N.W.2d 334, the court stated:

> We leave it to the district court's sound discretion to award reasonable attorney fees, regardless of whether a party hires one or multiple attorneys. [citation omitted]. We reject the DOT's argument that a landowner may not recover fees for more than one attorney.

<u>Id.</u> at ¶10.

out time that reasonably is not compensable under the fee-shifting statute.[3] As a consequence, the approaches taken below in deciding what is reasonable may have resulted in a lower award than might have been the case if counsel had made some effort to clean up the request.

### 3.    Continental's attorney billing records

After reviewing Continental's objections and the Fishers' reply, the court concluded the amount of time spent by Continental's legal team might have some probative value in determining the reasonableness of the Fishers' request.  This was the reason for requiring Continental to disclose the time spent by its team.  See Duchscherer v. W.W. Wallwork, Inc., 534 N.W.2d 13, 19 (N.D. 1995) ("The rate and hours expended by opposing counsel are often probative of the reasonableness of attorney fees for prevailing counsel.").

Attached to this order is an Addendum in which the court:  (1) summarizes the time spent by the Fishers' legal team and the amounts being requested; and (2) the time spent by Continental's legal team and what its team's charges would be using the rates of Fishers' legal team.  Continental redacted the rates and amounts charged by its attorneys when it submitted their billings.  Undoubtedly, those rates were significantly higher than those of the Fishers' legal team given that Continental was represented by a large, national firm.

As set forth in the Addendum, Continental's legal team expended 302.5 hours of attorney time on the appeal[4]  This compares to the  193.6 hours expended by the Fishers' legal team of which only 116.8 hours was attorney time with remaining 76.2 hours time spent by paralegals.  Also, while

---

[3]    An example is the time spent related to the withdrawal of one of the Fishers' attorneys.  Another appears to be time spent towards collection of the sums awarded.

[4]  The court has excluded from Continental's breakdown one-tenth of an hour expended by a paralegal, which was the only paralegal time in Continental's billings.

Continental suggested in its response brief that the Fishers' legal team was overstaffed with three attorneys and two paralegals, it neglected to mention that its own legal team consisted of five attorneys—although Continental wrote off the time for the fifth attorney.  More on this later.

What is also notable in comparing the billing records—aside from the disparity in hours (particularly the attorney time)—is how the firm representing Continental staffed the appeal.  Rather than relying upon the two highly competent attorneys who tried the case and were intimately familiar with it, the firm brought in a whole new team from its D.C. office to handle the appeal—presumably appellate specialists.  This appeal team was comprised of a lead appellate attorney, an attorney who did most of the initial work on the briefs, and a third associate attorney who also spent a considerable amount of time on the initial brief and Continental's appendix.   As far as the court can tell, these attorneys  had no prior connection with the case.  Finally, in addition to that, *both* of the trial attorneys provided input, including reviewing and commenting upon the draft briefs.

### 4. Continental's claim that Fishers' legal team spent more time on "comparable work"

Likely concerned about what conclusions the court might draw from its attorney billings, Continental contends in its sur-reply that Fishers' legal team spent more time than Continental's for what it claims was "comparative work." Continental begins this argument by noting that, as the appellant, its legal team was required to do more work than the Fishers' team for such things as: deciding whether and what to appeal; preparation of a reply brief; and deciding whether to seek further review from the Eighth Circuit's decision.  Continental then includes in its brief a chart that is reproduced below (sans some of the formatting and two footnotes):

| Stage of Appeal | Time Period | Continental | Fishers |
|---|---|---|---|
| Evaluating Appeal | 12/1/23 to 1/25/23 CLR | 4.70 | N/A |
| General Appellate Filings | 1/26/23 to 2/15/23 Both | 10.70 | 14.40 |
| Identifying Appellate Issues | 2/16/23 to 3/10/23 CLR | 40.90 | N/A |
| Drafting Main Brief | 3/10/23 to 5/16/23 CLR<br>2/16/23 to 5/18/23 Fisher | 90.40 | 138.40 |
| Drafting Reply Brief | 5/17/23 to 6/27/23 Both[5] | 54.20 | N/A |
| Oral Argument | 6/27/23 to 10/18/23 CLR<br>5/17/23 to 10/18/23 Fisher | 44.00 | 34.90 |
| Evaluating Further Appeal | 10/19/23 to 5/29/24 | 5.20 | N/A |

The chart sets forth what Continental claims were the tasks performed by its legal team on appeal and then, for each task, the time spent by its team as compared to the time, if any, by the Fishers' team. Based on the information in the chart, Continental claims an "apples-to-apples" comparison of the time spent by the respective legal teams for "comparable work" shows that Fishers' legal team billed 187.70 hours as compared to 145.20 hours by its team—a difference of 42.60 hours.

What initially stood out to the undersigned with respect to this argument was the entry in the chart in which Continental claims it spent 40.90 hours simply "identifying" issues for appeal. All of this was time Continental did *not* include on its side of the ledger for purposes of comparison since, according to Continental, there was no comparable work by the Fishers' legal team. On its face, and without digging into the attorney billings and appellate filings, this appeared not credible.

Notably, Continental raised the following issues on appeal:

1.      Did the district court err in holding that sufficient evidence or North Dakota's law supported the jury's verdict that the Fishers' lost use of and access to their pore space?

---

[5] The reference in this cell to "Both" was obviously an error and should have been "CLR."

2.      Did the district court err in admitting damages testimony from a landowner lacking any relevant personal knowledge and third-party agreements with materially different terms to calculate damages to the Fishers' pore space?

3.      Did the district court err in awarding attorney's fees and costs to the Fishers?

Fisher, Doc. No. 23-1147, Appellant's Opening Brief (filed April 3, 2023). Continental's primary

defense in this case—at least by the time of its second motion for summary judgment—had to do

with the first issue. That is, Continental's contention that North Dakota's surface owner protection

law required the Fishers to prove actual lost use of, or access to, their pore space in order to receive

compensation and that the Fishers could not prove that. Continental asserted this defense when it

moved for summary judgment a second time (i.e., even accepting all of the Fishers' evidence that

would be admissible, they could not prove actual lost use of or access to their pore space).

Continental renewed the argument during trial in its motions to dismiss at the close of Fishers' case

and at the close of the evidence, and then renewed the argument again in its post-trial motion for

judgment as matter of law. It defies belief that Continental came up with its first point of appeal

only after spending hours scouring the record.

The same is true for the second point of appeal. Continental argued vociferously that the

referenced landowner testimony and third-party agreements would not be admissible in its second

motion for summary judgment. It then renewed its arguments in its motions in limine, objections

during trial, motions during the trial, and the post-trial motion.

As for the last point of appeal, the award of attorney fees and costs was hotly contested in

the post-trial briefing. When the court made the award, it was likely Continental would appeal it.

On its face then, the time entry in Continental's chart that more than more than forty hours

was spent after the appeal was filed and simply to identify  points of appeal did not pass the smell

test. Also, it seemed highly improbable the appeal was filed without counsel having first discussed

10

with Continental the issues that would be raised. Finally, taking over forty hours to simply "identify" the issues for appeal and not working substantively on them would be grossly excessive, particularly given the history of this case.

In examining Continental's appellate filings and time records, the court's initial skepticism proved to be well-founded. Most notably, Continental filed its "Appellant's Statement of Issues" with the Eighth Circuit on February 9, 2023. Fisher, Doc. No. 23-1147, Appellant's Statement of Issues (filed Feb. 9, 2023). This was a week *prior* to when it now claims it *began* "identifying" the issues for appeal. Further, an examination of the actual descriptions of work performed in Continental's billings is consistent (1) with Continental having decided the issues for appeal by the time it filed its Appellant's Statement of Issues (and most likely well before that), and (2) the time spent thereafter was in developing the arguments for its opening brief.[6]

To be sure, it was not enough for Continental's legal team to decide on the broad points of appeal. The particular arguments needed to be developed and fleshed out. However, Fishers' legal team would have had to do comparable work, *e.g.*, consider whether the arguments were supported by the law and the facts, develop counter-arguments, and identify and argue points ignored (or given

---

[6] The court understands that, in deciding what to appeal, there are additional considerations apart from simply what was previously argued and the trial court rejected. One example of a point that Continental may have considered to raise and ultimately did not was this court excluding on grounds of lack of foundation and relevance the opinions of one of its experts. However, there were few of these kinds of points. And, with respect to the one just mentioned, it likely took no more than a brief review to wisely decide the issue would likely have no traction given the court's reasons for exclusion of the opinions and its discretion. Further, any decision not to raise this as a point of appeal undoubtedly was made before Continental filed its "Appellant's Statement of Issues" since it was not included as one of the points of claimed error.

While the court reaches these conclusions based on the record before it, what the court does not have the benefit of are the billings of Continental's legal team for the period from when the jury made its decision up through the court's ruling on the post-trial motions. The court would be *shocked* if those billings did not reflect consideration (including discussion with Continental) of the perceived points of error by the court and what likely would be the subject of an appeal. The court would also be *shocked* if the post-trial motion for judgment as a matter of law was made without any consideration of what would be appealed if the motion was lost. The attorneys for Continental were too good for that to have happened.

short-shrift to) in Continental's briefing.  Also, counsel would have to spend some time contemplating what might be Continental's reply and try to anticipate that in crafting the response.

When the hours that Continental claims for simply "identifying" legal issues for appeal are properly included in Continental's side of the ledger for purposes of its comparison to the time spent by the Fishers' legal team, the claimed disparity in hours spent on "comparable work" evaporates.

There is also, however, another problem with Continental's phony "apples-to-apples" comparison. This is the 53.5 hours expended by the third appellate attorney on the appeal brief and appendix that Continental did not include in its total.  Continental contends these 53.5 hours should not be considered because the work of this attorney was for "training purposes" and written off for that reason. The court is skeptical of that explanation.  What seems more probable (given that the hours were included in its billings and then written off) is that the billing partner concluded that some writeoff of time was necessary given how the case was staffed and chose those hours to write off.  But, regardless of the reason, it does appear that some of the work of the third attorney advanced the ball and was relied upon both with respect to preparation of Continental's brief and as well as its appendix.  Hence, for making a true "apples-to-apples" comparison, the court concludes some of that time would have to be included.  And, if that is done, the time spent by Continental's legal team on "comparable work" was greater than the Fishers' legal team.

There is also one other point worth mentioning—particularly given Continental's wanting to exclude the work done by the third attorney.   Of the 187.70 hours Continental attributes to the Fishers' legal team for what in reality was not only preparation of the Fishers' brief but also the accompanying appendix, approximately 55 of these hours was time spent by a paralegal.  This is in contrast to all of the time on Continental's side of the ledger being expended by five attorneys.

### 5.    The court's conclusions re Continental's arguments

It is clear that Continental's legal team spent more time than Fishers' legal team (and considerably more in attorney time)  on "comparative work"—not less.  However, this does not mean the court will award the full amounts requested by the Fishers.  The court's obligation is to award only those fees and costs that are reasonable given the circumstances of the case.  And here, the court would *not* award Continental all of its fees if it was the party entitled to an award.  While Continental complains of "overstaffing" and "redundancy" on part of the Fishers' legal team, the approach taken by the firm representing it fits these descriptions in spades—and with no discernable benefit that the undersigned can see.  For the most part, the arguments in Continental's appeal briefs are dressed  up restatements of the arguments previously made by its trial team.  In fact, a couple of the arguments the appellate team added unnecessarily increased Continental's appeal costs and now what the court awards for fees.  More on that in a moment.

Nevertheless, the time spent by Continental's legal team is a factor the court considers.  For this reason alone, the court rejects Continental's suggestion that the purported "overstaffing" and "redundancy" on the part of the Fishers'  team justifies a percentage reduction of up to 50% of the time expended by the Fishers' team.  Also, a number of the specific objections by Continental  to time entries in the Fishers' billing statements  ring hollow when the effort expended by Continental's legal team is considered.  That being said, the court will make some reductions with respect to the time being claimed by the Fishers' legal team to arrive at what the court considers to be reasonable for the particular circumstances of this case after applying all of the relevant <u>Big Pines</u> factors.

**D.      The court's decision re award of attorney fees for the appeal**

**1.      Attorney time**

The court has carefully reviewed the time entries in the Fishers' legal team's billings for the appeal, including particularly those that are the subject of the chart included in Continental's response brief.  For purposes of analysis, the court will address first the attorney time and then the paralegal time.

The court will reduce the attorney time being requested for compensation by 3.0 hours for lead counsel.  This covers one entry for a fractional part of an hour that appears to be unrelated to the appeal as well as the entry for time in excess of 12 hours. The court will also deduct the full 5.7 hours spent by the third attorney who withdrew not long after work had begun on the appeal.  The later deduction is for: (1) time unrelated to the appeal; (2) what appears to be some duplication of effort later on account of her withdrawal; and (3) somewhat more  arbitrarily reducing the attorney time down to a point the court deems more reasonable.  With these deductions, the attorney hours claimed by the Fishers' legal team are reasonable for the following reasons:

•      The uniqueness of the case and the difficulty of the issues.  For a "run-of-the-mill" case, the total time expended by Fishers' attorneys might give the court pause. However, this was a first-of-its-kind case and the issues were difficult.  This justifies not only the time spent by lead counsel but also some of the assistance provided by other counsel that might in other instances go beyond what would be appropriate to address attorney availability and staffing issues.  That is, the nature and difficulty of this case warranted having a "second set of eyes" to assist with the development of the arguments and review of drafts of briefs beyond merely assisting with the

drafting. Continental apparently concluded the same thing based on its attorney billings. Also, Fishers' lead counsel off-loaded some of the work on paralegals. Hence, the amount of attorney time that might otherwise be recoverable likely would have been greater if paralegals had not been utilized.

- <u>What was at stake and the success achieved</u>. This factor has been addressed above. The court concluded it supports a fulsome award.

- <u>The time spent by opposing counsel</u>. The attorney hours for the Fishers' legal team were substantially less than for Continental's—even after accounting for their having to do more work. This has been discussed at length.

Finally, while the court reaches its conclusion with respect to the reasonable attorney time based on the factors set forth above, Continental's aggressive, spare-no-expense approach further supports the court's determination.

In the court's earlier award of attorney fees and costs, the court noted the aggressive positions taken by Continental before this court and that this contributed to the cost of the litigation. In sustaining this court's prior award, the Eighth Circuit made mention of this point as one of the reasons for concluding this court had not abused its discretion in making the sizeable award it did. <u>Fisher</u>, 102 F.4th at 932. The court reaches a similar conclusion with respect to the appeal.

While Continental raised a number of legitimate arguments in its appeal,[7] two points it did make stand out as being dubious and unnecessarily increasing the costs of the appeal. One was the

---

[7] What does the governing North Dakota statute require in order for the Fishers to be entitled to compensation and did the court misapply the language of the statute? What evidence was admissible to prove an entitlement to compensation and did the court error in allowing in the evidence it did? Did the record evidence support the jury's findings? All points upon which reasonable persons could differ. Also, Continental raised non-frivolous arguments with respect to this court's award of fees and costs, including questioning the size of the award compared to the size of the jury verdict and whether or not the court should have awarded as much of the expert costs as it did.

attack on the methodology employed by the court in awarding the attorney fees and costs. Continental argued the court had erred when it made across-the-board percentage reductions for certain amounts of the time expended by the Fishers' legal team instead of purportedly not having determined an appropriate lodestar. The problem for Continental, as Fishers' counsel argued in response and the Eighth Circuit agreed, is that Continental invited the court to take the approach it did. Fisher, 102 F.4th at 930.

The other was with respect to Continental's argument that the court erred in admitting certain agreements with landowners that provided compensation for subsurface disposal of waste water. At one point in its brief, Continental stated:

> The Continental Agreements and Department Agreements presented as evidence of damages should have been excluded because they are not "fairly comparable" to the sole issue here, which is lost use of and access to pore space. From the very start, the trial court expressed doubts about admitting these agree-ments into evidence: *"I am still concerned about the agreements that are going to be offered into evidence" because "there's a fair possibility of juror confusion as to what the agreements mean."* App. 270; R. Doc. 199, at 86. The court was right to be concerned and wrong to have admitted them.

Fisher, Doc. No. 23-1147, Appellant's Opening Brief at 29 (filed April 3, 2023). As Fishers' counsel correctly pointed out (and needing several pages of the appellee's brief to unwind), Continental mis-characterized what the court was saying by taking two separate statements by the court, joining them with the word "because," and leaving out critical distinguishing language.

With these arguments and Continental's overall spare-no-expense approach, the following observation of the North Dakota Supreme Court is particularly appropriate:

> A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent overcoming its vigorous defense.

Duchscherer, 534 N.W.2d at 19 (N.D. 1995) (internal quotations and citing authority omitted).

### 2.    Paralegal time

The Fishers' team's approach in staffing the work was different than Continental's in that significant use was made of paralegals.  As noted earlier, that was not the case for Continental —unless one treats some of the time expended by the third appellate attorney and written off to be equivalent of paralegal time.

The court agrees that some of the paralegal time was for work unrelated to the appeal or appears to be excessive or unnecessarily redundant–but not all of the time Continental argues should be excluded.[8]  The court has carefully reviewed Continental's objections to the paralegal time and concludes it would not be productive to rule on each one.  Instead, the court makes a percentage reduction of the paralegal time to include all the time the court has concluded is not reasonable under the circumstances. In so doing, the percentage the court has chosen, if anything,  generously favors Continental.  Perhaps, if Fishers' counsel had made a good faith effort to weed out questionable time, the court would have taken a different approach.

The total paralegal time expended by the Fishers' legal team was 76.2 hours.  The court reduces that time by 15% or 11.4 hours.  The time remaining of 64.8 hours is reasonable.

## IV.    COSTS FOR THE APPEAL

The Fishers seek to recover costs totaling $4,194.30.  Of this amount,  $2,884.16 is for an invoice from Counsel Press, Inc ("Counsel Press")  for assistance in formatting, assembling, and filing documents for the appeal.  Continental objects to the recovery of these costs.  The remaining

---

[8]  An example where the court disagrees with Continental is its objection to the 1.3 hours spent by Paralegal Price on 1/27/23.  Continental's  objection is "Excessive time reviewing standard rules."  The time entry for Paralegal Price on that dates states that 2.6 hours was spent for the following:

> Review Fed. Rules of Appellate Procedure and 8th Circuit Rules for filing requirements.  Draft shell for Appellee's Principle Brief.

When the time is compared to all of the tasks for this entry, the court concludes the time to be reasonable. Further, when one examines Continental's billings, there appears to be similar work performed on both tasks.

costs are for travel, lodging, and ground transportation for the Eighth Circuit argument. Continental does not object to these costs and the costs appear reasonable. Hence, they will be allowed without further discussion.

### A.    Continental's arguments re the Counsel Press invoice

With respect to the Counsel Press invoice, Continental writes:

> Additionally, the Fishers seek recovery for $2,984.16 by a vendor, Counsel Press, Inc. [223-2 at pg. 20]. This vendor invoice is for unnecessary and duplicative time spent preparing citations, the table of contents, and other aspects of the formatting of the Fishers' appellate brief: time already billed by the Fishers' paralegals and work that could have been performed by in-house administrative staff. The Court should exclude recovery for this unnecessary, duplicative, and excessive vendor invoice.

Doc. No. 226, p. 5. Fishers' lead counsel replies stating he has found Counsel Press to be more efficient and cost-effective in performing certain tasks related to the preparation and filing of documents with the Eighth Circuit than doing the work in-house. He also denies that there was any duplication of time by in-house staff.

### B.    The court's decision

In objecting to the Counsel Press invoice, Continental does not go through each of the charges in the invoice like it did for opposing counsel's billings. By not doing so it avoided having to grapple with the fact that more than half of the invoice is for work on a two-volume, 381 page appendix. Also, Continental avoided having to address the costs of shipping the appendix including explaining how opposing counsel's "in-house administrative staff" could transport the appendix to St. Louis cheaper than the FedEx.

As tempting as it is to devote the same effort in disposing of Continental's objections as it appears to have made in asserting them, the court makes the following observations:

•    As already noted, one of the line items of the Counsel Express invoice is for

"shipping" and "handling" of the appendix in the amount of $566.12. Continental's own billings reflect shipping cots of $328.90 for what clearly is the same thing. Even if one assumes that only what Continental spent for shipping is what is reasonable, the Counsel Express line item includes "handling" and this additional amount, together with the additional line items for service of documents of $27.00 and filing of $90, appear to be reasonable considering that, if the Fishers' legal team had used one of its paralegals to do this work, the amount would likely have been comparable.

- In examining the time records submitted by Continental, it appears that its legal team expended over 35 hours of *attorney* time on its appendix. While part of this time was by the third appellate attorney and written off, it appears some of it advanced the ball. The Fishers' legal team, on the other hand, devoted substantially less time on its appendix and it appears one of the reasons was work performed by Continental Press.

- The line items for preparation and supplying of the covers ($110.00) and preparation of the table of contents ($90.00) for the appendix do not appear to be unreasonable given what it likely would have cost had paralegal time been expended to do similar work.

- The largest line item in the invoice related to the appendix is $1,082.04, which appears to be for assembly, formatting, and copying of the appendix. It appears this cost was assessed at a rate of $2.84 per page rather than hours spent. If this was just copying, this amount would be excessive. However, given the other work that it

19

covered, the overall charge appears to be reasonable.

There is no free lunch.  If Counsel Press had not performed this work, there would have been a copying cost. While the court would expect that the Fishers' team's rates would cover routine copying charges, here the copying cost would have been large enough to justify a separate charge under prevailing local rates.  Further, it would have been reasonable to employ paralegals to review the Eighth's Circuit's requirements, do the formatting, and supervise (if not actually perform) the assembly of the appendix.  With all of that, the overall charge of $1,082.04 does not appear to be unreasonable.  Also, in reviewing the entries in Continental's attorney billings of over 35 attorney hours related to the appendix, there appears to be several entries where the third appellate attorney  performed some of the same work.  In addition, and not written off, was the following time entry for one of the two other appellate attorneys of 1.80 hours for:

> Review appendix and coordinate printing and service of the appendix; correspondence with Mr. Janacek [the associate] regarding the same.

(Doc. No. 232-1, at 27).  Using the Fishers' legal team rate of $300,  the amount for this one line item alone would be $540.

- The remaining line items in the Counsel Press invoice relate to the preparation of the of the brief, table of contents, table of citations, electronic file production, and electronic filing.  The largest amount is for preparation of the final copy of the brief and appears to include formatting and compliance with Eighth Circuit requirements. After carefully reviewing the time spent by the Fishers' legal team, it does not appear there was  undue redundancy but, even if there was some, it would be within the 15%

reduction in paralegal time made earlier.  Also, the other charges appear to be reasonable and within what would be the charge if one of Fishers' paralegals had performed the work.  In summary, the Counsel Press charges for the brief are not unreasonable for the services performed and actually appear cheap when comparing it to similar work by Continental's legal team.   Finally, neither party has cited to authority discussing the use of commercial brief printing services.  However, at least one other court has approved a similar amount for preparation by Counsel Press of the final draft of a brief for filing.  See Lambert v. Herrington, 2023 WL 5278857, at *6 (S.D. Ala. Aug. 16, 2023).  (approving $1,249 for the physical preparation of an Eleventh Circuit appeal brief that included costs for brief covers, table of contents, citations, electronic filing, service,  and shipping and handling.)

While the court allows the full charge for the Counsel Press invoice for the reasons stated above, another reason is helping to insure there are counsel who are qualified and available to represent landowners in the Fishers' situation.  The Fishers' counsel is one of the few in the area that has particular expertise in cases like this.  As a consequence, his small firm is very busy.  Given this circumstance, it was not unreasonable for Fishers' counsel to turn to Counsel Press for assistance.  Also, local landowners may need to turn to other law firms in this area who do not handle Eighth Circuit appeals on a regular basis.  Finally, after having brought in a new team of specialists to handle the appeal, Continental is in a poor position to claim that the modicum of assistance provided by Counsel Press was an extravagance and should not be permitted.

V.    **THE SUPPLEMENTAL REQUEST FOR FEES**

As noted earlier, the Fishers seek to amend their fee request to include an additional

$6,179.00 for time spent following the Eighth Circuits decision, including primarily bringing the motion for fees and costs and replying to Continental's objections.  In support of this amount, the Fishers' legal team has filed supporting billing statements along with an invoice from a Montana law firm for the drafting of the brief in support of the motion for fees.

On its face, the amount sought by the Fishers appears excessive considering the length and content of the initial motion for fees and the sur-reply.  Also, counsel once again dumps all of his team's invoices on the court without making any attempt to weed out the time that is not compensable.

### A.    Continental's objections

Continental objects to any award of fees for bringing the motion for fees, *i.e.,* recovery of "fees on fees."  After acknowledging that the Eighth Circuit permits recovery of fees on fees, Continental argues that North Dakota law is unclear.  In support, it cites North Dakota Dept. of Trans. v. Schmitz, 2018 ND 113, 910 N.W.2d 874 (N.D. 2018) where the North Dakota Supreme Court upheld the denial of a request for fees on fees as being within the court's discretion.

In the alternative, Continental argues the amounts the Fishers are seeking are unreasonable, arguing that some of the time in the supporting invoices is:  (1) for things unrelated to the fee request; (2) excessive for the work performed; and/or (3) redundant to work done by others.  Continental includes another chart in its sur-reply setting forth the particular time entries from the Fishers' team's billings that it objects to along with the amount of time claimed to be non-compensable.  Continental contends the total amount that should be excluded based on its chart is $1,240.  In addition, Continental objects to the invoice  for  work done by the two outside Montana attorneys on the brief in support of the motion for fees.  Continental contends this work was

"duplicative" and performed by attorneys who had not entered an appearance.[9] Continental asks that the entire amount of the invoice ($1,675) be excluded. With that, Continental requests that Fishers' request for fees of $6,179 be reduced to no more than $3,264.

### B.   The court's ruling

In <u>Schmitz</u>, the North Dakota Supreme Court held that a court has the discretion under N.D. Cent. Code § 32-15-32 (the statute providing for recovery of attorney fees in condemnation cases) to award fees for making an application for attorney fees and costs. While stating that as a general rule, the court went on to hold the district court did not abuse its discretion in failing to make a separate award for fees for making the request for fees. The court noted that the award of fees the district court did make was based on a determination of a reasonable number of attorney hours for the "entire action." 218 N.D. 113, at ¶10. In short, there appears to be no lack of clarity in North Dakota law with respect to the recovery of fees on fees—at least under § 32-15-32.

While the fee-shifting statute in this case is different, there is no reason to believe the North Dakota Supreme Court would not come to the same conclusion here, *i.e*., an award of fees for a motion seeking recovery of fees and costs is within the court's discretion under N.D.C.C. § 38–11.1–09. The ultimate goal of the two statutes is the same. Also, there is nothing in the wording of § 38–11.1–09 that prohibits such an award.

In this case, the court will make an award. But, while the court does not agree with all of Continental's objections to the additional fee request, it does agree some of the time should not be counted. Some of it is unrelated to the motion seeking fees and is otherwise beyond what the court would permit recovery for under the fee-shifting statute. Also, there does appear to be some

---

[9]   The fact the two attorneys had not entered an appearance would not be reason to reject the amounts if otherwise reasonable. The brief in support of the motion was signed by Fishers' lead attorney.

questionable overlap between the work done by the Fishers' paralegals in preparing a draft of the brief in support of the motion and the work of the two outside attorneys. Finally, the brief in support of the motion for recovery of fees spends time addressing why the motion for recovery of fees for the appeal was timely. This would not have been necessary had the motion been filed earlier.

Here, rather than try to make adjustments to the time claimed in the invoices for these points, the court takes a different tack. After considering the length and content of the Fishers' filings, the court concludes that 10 hours of attorney time at $400/hr. and 2 hours of paralegal time at $160/hr. would be reasonable for: (1) research and preparation of the motion for fees and supporting documents that were filed; (2) reviewing Continental's response (including its detailed objections), and (3) preparing the reply and supporting documents. However, the court is going to reduce the attorney fees by 4 hours for the research and writing of that portion of the brief in support of the motion for fees that justifies its timeliness. Thus, the court's award is $2,400.00 in attorney time and $320 in paralegal time for a total of $2,720.00. No other adjustments will be made for other <u>Big Pines</u> factors.

## VI.    <u>THE COURT'S AWARD</u>

In summary, the following reflects the court's overall "lodestar" determination of reasonable hours and how much the court is awarding in fees and costs:[10]

---

[10]    In the event of any discrepancy between the court's discussion above and what is in the chart below, the hours and amounts set forth in the chart are the court's award.

| Appeal | Hrs. | Rate | Amount | Total |
|---|---|---|---|---|
| Eighth Circuit appeal | | | | |
|    Lead appellate/trial attorney | 52.4 | $400 | $20,960 | |
|    Assisting appellate attorney | 55.7 | $300 | $16,710 | |
|    Paralegals | 64.8 | $160 | $10,368 | |
| Motion for fees | | | | |
|    Attorney | 6.0 | 400 | $2,400 | |
|    Paralegal | 2.0 | 160 | $320 | |
| **Total Fees** | | | | $50,758 |
| **Costs** | | | | $4,194 |
| **TOTAL AWARD** | | | | $54,952 |

## VII.  ORDER

It is hereby **ORDERED** and **ADJUDGED** that the Fishers' motion for fees and costs for the appeal (Doc. No. 221) is **GRANTED IN PART and DENIED IN PART**. The court's prior amended judgment shall be amended further to include recovery of $50,758 in attorney fees and $4,194 in costs for a total of $54,952. These amounts shall be in addition to the attorney fees and costs already awarded.

**IT IS SO ORDERED**.

Dated this 15th day of October, 2024.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court

# ADDENDUM

| Fisher Legal Team | Hours | Rate | Total |
|---|---|---|---|
| Lead appellate/trial attorney | 55.4 | $400 | $22,160 |
| Assisting appellate attorney | 55.7 | $300 | $16,710 |
| 3rd attorney | 5.7 | $250 | $1,425 |
| **Subtotal Attorneys** | **116.8** | | **$40,295** |
| Paralegal 1 | 64.1 | $160 | $10,256 |
| Paralegal 2 | 12.1 | $160 | $1936 |
| **Subtotal Paralegals** | **76.2** | | **$12,192** |
| **Total Hrs/Dollars** | **193.0** | | **$52,487** |
| | | | |
| **Continental Legal Team** | | | |
| Lead appellate attorney | 110.0 | $400 | $44,000 |
| Assisting appellate attorney | 128.9 | $300 | $38,670 |
| Lead trial attorney | 5.7 | $400 | $2,280 |
| 2nd Chair trial attorney | 4.4 | $300 | $1,320 |
| **Totals w/o associate** | **250** | | **$86,270** |
| Associate (3rd attorney) | 53.5 | $250 | $13,375 |
| **Total Hrs/Dollars** | **302.5** | | **$99,645**[11] |

---

[11]  As noted earlier, this amount is using the Fishers' legal team's rates.  The court would not be surprised if the actual amount billed  to Continental was north of $150,000, even with the time of the third attorney being written off,.  Cf. In re Lordstown Motors Corp., et. al, No. 23-10831, Summary Cover Sheet for Seventh Monthly Fee Application of Baker & Hostetler, L.L.P., filed April 5, 2024 at Doc. No. 1125, p.2 (Bankr. D. Del.) (setting forth rates charged by various attorneys).